IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TIMOTHY ALAN BORGAN,**

   **Plaintiff,**

 v.          Civil Action 2:20-cv-6166
               Judge James L. Graham
               Magistrate Judge Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

   **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Timothy A. Borgan, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**

Plaintiff protectively applied for SSI on March 28, 2018, alleging disability beginning on February 15, 1985. (Doc. 12, Tr. 167–72). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on February 7, 2020. (Tr. 33–68). Ultimately, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 12–32). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 2, 2020 (Doc. 1), and the Commissioner filed the administrative record on June 1, 2021 (Doc. 12). Plaintiff filed his Statement of Errors, (Doc. 21), on September 25, 2021, Defendant

filed an Opposition, (Doc. 23), on September 29, 2021. Plaintiff did not file a reply.  So the matter is now ripe for consideration.

    **A.**    **Relevant Hearing Testimony**

The ALJ summarized Plaintiff's testimony at the hearing as follows:

The [Plaintiff] alleged disability due to clubfeet, perforated hips, difficulty urinating, testicular cancer, neck pain, and depression (Ex. B1E/2). He reported problems with his neck and back pain, carpal tunnel, bilateral clubfeet, depression with suicidal thoughts, and migraines (Ex. B5E/7). He testified that it hurts to grip or hold things due to pain and numbness, it hurts to lift his daughter, and he has a hard time bending to wash dishes (Hearing Record). He explained he is unable to pick up over the weight of a gallon of milk, can sit for 30 minutes depending on how comfortable the chair is, and can sit for one hour and stand for one hour. He also indicated he just wants to die all the time and continues to go to counseling.

(Tr. 21).

    **B.**    **Relevant Medical Records**

The ALJ summarized the medical record as to Plaintiff's physical impairments as follows:

The objective evidence referenced a history of neck and back pain treated conservatively (Ex. B2F, B4F). Examinations indicated the [Plaintiff] generally maintained full strength, showed only mild weakness at times, and had normal gait (Ex. B2F). Imaging of the lumbar spine showed moderate disc space narrowing at L5-S1 and other disc spaces well maintained, no fracture or other acute or focal bony abnormality, and no paraspinal abnormality (Ex. B2F/126, 137). There was no evidence of significant spinal canal stenosis, neural foraminal narrowing, or spondylolisthesis (Ex. B2F/122). Imaging also showed unremarkable thoracic spine and cervical spine change from anterior spine fusion from C4-C6 but no significant spinal canal stenosis or neural foraminal narrowing and no evidence of spondylolisthesis (Ex. B2F/120-121, 124-125, 137). A CT of the head performed in July 2017 was unremarkable (Ex. B2F/2).

Subsequent progress notes from October 2018 indicated improved neck pain and range of motion (Ex. B6F/3). He presented as well developed with regular heart rate and rhythm, normal auscultation and respiratory effort, and normal extremities (Ex. B6F/5, 10, 16, B8F/8). The [Plaintiff] at times showed some cervical paraspinal muscle spasm, tightness, and decreased range of motion (Ex. B11F/32, 37, 42, 47). His treatment plan included muscle relaxant as needed and medication (Ex. B11F). The record included no evidence of invasive procedures, inpatient stays, repeated emergency department visits, or extensive physician intervention for his spine conditions.

> Regarding other musculoskeletal conditions, the record included evidence of moderate right shoulder symptoms and right shoulder pain (Ex. B11F/8). The [Plaintiff] reported shoulder pain that occurred intermittently and aggravated by lifting (Ex. B11F/20). A[n] MRI of the right shoulder from December 2019 showed supraspinatus and infraspinatus tendinopathy and no evidence for rotator cuff, labral tear, or abnormal joint effusion (Ex. B11F/5). He continued to present as well developed with normal respiratory effort, regular heart rate and rhythm, and normal extremities (Ex. B11F/11-59). He showed some right shoulder tenderness and moderate pain with range of motion (Ex. B11F/11, 16, 22).

(Tr. 21–22).

The ALJ summarized the medical record as to Plaintiff's mental impairments as follows:

> In addition, the record included evidence that referenced past treatment for mental health symptoms (Ex. B1F/4). Progress notes from 2011 indicated the [Plaintiff] presented as unkempt and withdrawn with racing thoughts, depressed mood, and loss of interest. In 2018, the [Plaintiff] presented to office visits with a primary care provider for medication refills to treat depressive symptoms (Ex. B4F). He reported following a course of treatment that included Cymbalta with good results and denied any worsening of symptoms and denied any ideations (Ex. B4F/2). On examination, the [Plaintiff] appeared well developed and oriented with appropriate mood and affect, not agitated, anxious, or hopeless, and displayed no pressured speech or suicidal ideation (Ex. B4F/4). He also showed regular heart rate and rhythm, normal auscultation, and normal extremities.
>
> The record included evidence from 2018 that showed some increased symptoms (Ex. B6F/6, 10, 13, 17, B8F/9). He described difficulty with functioning, concentrating, and sleep, and presented with anxious/fearful thoughts and depressed mood, issues (Ex. B6F/13, B8F/5). He noted his symptoms were aggravated by lack of sleep and social interactions, but could be relieved with medication. [Plaintiff] also noted that he was going through a rough time with his girlfriend and family situation and had been out of medication for a week (Ex. B6F/12). Subsequent progress notes in September 2018 and October 2018 indicated stable and improving mood and sleep (Ex. B6F/2). He reported improved sleep, mood and energy (Ex. B6F/2). [Plaintiff] otherwise presented as oriented with appropriate mood and affect and normal memory (Ex. B6F/16, B8F/8). On examination, he presented as oriented with appropriate mood and affect and normal memory (Ex. B6F/5, 10). During office visits in 2019, [Plaintiff] continued to generally present as oriented with appropriate mood and affect and normal memory (Ex. B11F/11-59). During an office visit in April 2019, he reported difficulty with functioning but again had been without medication for about a week (Ex. B11F/56). His treatment plan included to follow his medication regimen as prescribed.
>
> [Plaintiff] also presented for a psychological consultative evaluation on August 7, 2018 (Ex. B5F). He provided information and demonstrated understanding of the

3

> discussion. On examination, he presented with average appearance and grooming, good hygiene, and normal gait. He presented as significantly depressed with poor eye contact and slow psychomotor response but was cooperative and showed no impulsivity. He generally showed intelligible speech, although spoke slow and tended to mumble. He noted to have taken medications in the past but has had no mental health treatment since 2015. He described symptoms of depression and anxiety but remained oriented and indicated no auditory or visual hallucinations, obsessions or compulsions. He had difficulty organizing information and showed moderate concentration but was able to follow two-step commands, reported he can read the newspaper, and estimated to have intellect within the average range. He noted to have poor coping skills, low self-esteem, and no motivation but insight and judgment appeared adequate. [Plaintiff] described daily activities to generally include taking care of his daughter while his girlfriend works.
>
> The record included some limited evidence from routine outpatient office visits with a mental health provider starting in 2018 (Ex. B7F, B12F). [Plaintiff] reported being severely depressed and hopeless, has had difficulty taking care of himself, and has issues with his girlfriend and her unwillingness to help (Ex. B7F/9, B12F/9). He further explained that he cannot take care of himself due to his daughter acting up, his girlfriend is hardly at home to help take care of her, and his lack of sleep has caused less energy, losing focus and his mind trailing off (Ex. B7F/9-10, B12F/9-10). On examination, he presented with neat appearance, impoverished speech, slow motor activity, flat affect, anxious and depressed mood, and suicidal ideation, but no memory impairment, estimated average intelligence, normal attention, and no hallucinations or other abnormal thought content (Ex. B7F/13, B12F/13). He showed guarded and withdrawn behavior but fair insight and judgment (Ex. B7F/14, B12F/14).

(Tr. 22–23).

### C. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 28, 2018, the application date. (Tr. 17). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis and allied disorders, anxiety disorder, and depressive disorder. (*Id.*). The ALJ found, however, that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 18).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, and crawl. He is able to perform only simple, routine

4

> tasks with only occasional interactions with supervisors, co-workers, and the public, and can tolerate only occasional and routine workplace changes.

(Tr. 20).

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that they are inconsistent because the objective evidence failed to substantiate the alleged degree of limitations. (Tr. 21).

As for the relevant opinion evidence, the ALJ found:

> The State agency psychological consultant at the initial level, Robert Baker, Ph.D., and at the reconsideration level, Deryck Richardson, Ph.D., opined mild limitation in understand, remember, or apply information and moderate limitation in interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself. They further opined [that] [Plaintiff] is able to understand and remember one-to-three step instructions and is able to concentrate sufficiently for the completion of one-to-three step tasks. He may need occasional flexibility with breaks when experiencing increased symptoms. [Plaintiff] is able to work in a setting with limited interaction with the general public and with a small group that involves occasional and superficial interactions with others. Supervisors should provide supportive and constructive feedback. [Plaintiff] would do best in a setting without major or frequent changes to work routine.
>
> I find these opinions partially persuasive. In particular, I find these opinions are consistent with the record that referenced no academic concerns, intact memory, understanding, orientation, and adequate insight and judgment (Ex. B4F-B8F, B11F, B12F). I also find [Plaintiff]'s ability to follow instructions, provide information, handle daily activities, and take care of his minor daughter on a daily basis support these opinions (Hearing Record, Ex. B5F). However, I find the limitations regarding social interactions and a flexible break schedule are not persuasive because they are vague and not supported by the evidence that indicated improved and stable symptoms when following a medication regimen (Ex. B4F, B6F, B8F, B11F). In addition, I note the record indicated the [Plaintiff] presented at times as guarded and withdrawn yet he remained cooperative with no impulsivity and explained he spent most of his time at home taking care of his minor daughter because his girlfriend was hardly at home to help (Ex. B5F, B7F/10).
>
> I considered the opinion of Marc E. Miller, Ph.D. based on a psychological consultative evaluation conducted on August 7, 2018 (Ex. B5F). He noted diagnoses of major depression and generalized anxiety disorder, moderate (Ex. B5F/4). Dr. Miller opined the [Plaintiff] has some difficulty in regards to understanding, remembering, and carrying out one and two-step job instructions and in maintaining attention span and concentration indicate some difficulty.

5

> Abilities and limitations in regards to interaction with co-workers, supervisors, and the public indicate difficulty and abilities and limitations in regards to dealing with stress and pressure in a work setting indicate difficulty. Dr. Miller further opined [Plaintiff] is able to manage his own funds.
>
> I also note a prior psychological consultative evaluation conducted by Dr. Miller on June 5, 2017 (Ex. B10F). He noted diagnoses of generalized anxiety disorder and dysthymic disorder. He opined no significant difficulty in regards to understanding, remembering, and carrying out instructions and no significant difficulty in his ability to work with coworkers, supervisors, and the public. Dr. Miller opined difficulty in regards to attention span and concentration and some difficulty in regards to dealing with stress and pressure. I find these opinions partially persuasive because they are generally consistent with the record as a whole that that support no moderate than moderate limitations and that the record that showed [Plaintiff] followed a conservative course of treatment that consisted of a medication regimen from which he experienced improvement and stability. I also find these opinions are consistent with intact cognitive functioning, estimated average intelligence, and no notable academic concerns (Ex. B5F, B7F/18-19). In addition, despite his depressed mood, flat affect, and withdrawn and guarded behavior, [Plaintiff] presented as well developed, oriented, and cooperative with average appearance and grooming, good hygiene, no memory impairment, no abnormal thought content, and adequate insight and judgment (Ex. B5F, B6F/5, 10, B7F/13, B11F/11-59, B12F/13). However, I note Dr. Miller provided one of his opinions prior to the application date in this case and that Dr. Miller's opinions included vague degree of functional limitations.

(Tr. 24–25).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant composite job as a lumber handler, cut-off saw operator, and forklift operator, but could perform jobs that exist in significant numbers in the national economy, such as an office helper, mailroom clerk, or cafeteria attendant. (Tr. 26–27). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since March 28, 2018, the date the application was filed (20 CFR 416.920(g))." (Tr. 28).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial

6

evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 155 (6th Cir. 2009). *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

7

Here, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work . . . except he can never climb ladders, ropes, or scaffolds.  He can frequently stoop, kneel, crouch, and crawl.  He is able to perform only simple, routine tasks with only occasional interactions with supervisors, co-workers, and the public, and can tolerate only occasional and routine workplace changes."  (Tr. 20).  Plaintiff alleges the RFC determination is not supported by substantial evidence because (1) he failed to address Plaintiff's limitations in concentration, persistence, and pace; and (2) he failed to include limitations related to Plaintiff's bilateral carpal tunnel syndrome.  (Doc. 21 at 6).

A.     **Concentration, Persistence, and Pace**

To begin, Plaintiff alleges that the ALJ's residual functional capacity analysis is not supported by substantial evidence because he did not adequately address Plaintiff's limitations in concentration, persistence, and pace.  (Doc. 21 at 6).

Specifically, Plaintiff challenges how the ALJ assessed the opinions of State agency psychological consultant and the consultive examiner, Dr. Marc E. Miller.  (*Id.* at 9).  Plaintiff disagrees with how the ALJ considered the state agency psychological consultant's opinion: "The state agency psychological consultant clearly opined that [Plaintiff] would have difficulty in maintaining attention and concentration; would have difficulty performing at a consistent pace without interruptions; and may require flexibility in his breaks; however, the ALJ failed to include these limitations in his residual functional capacity determination."  (*Id.* at 7–8).  Regarding Dr. Miller, Plaintiff alleges "the ALJ disregarded Dr. Miller's opinions regarding [Plaintiff's] difficulty with attention span and concentration, difficulty dealing with stress and pressure, depressed mood, flat affect, and withdrawn and guarded behavior."  (*Id.* at 9).  Plaintiff also points to the record, citing "diagnoses and symptoms including bipolar disorder, depression, adjustment disorder, self-loathing, unkempt appearance, poor eye contact, withdrawn, racing thoughts, loss of interest, poor

8

to moderate insight/judgment, anxious/fearful thoughts, difficulty concentrating, fatigue, manic and depressive symptoms, suicidal thoughts, difficulty sleeping, and symptoms of trauma." (*Id.* at 8 (citing Tr. 251, 253–55, 405, 412, 425, 430, 435–36, 451, 454, 457, 459, 471, 473, 479–81, 489, 493, 533, 569, 575, 579)).

The ALJ's role is to determine the RFC based on his evaluation of medial and non-medical evidence. "Ultimately, 'the ALJ must build an accurate and logical bridge between the evidence and his conclusion.'" *Davis v. Commissioner of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-CV-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020) (quoting *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019)). That is what the ALJ did here.

First, the ALJ considered Plaintiff's medical records. (Tr. 22–23). The ALJ considered Plaintiff's symptoms including severe depression, difficulty with functioning, difficulty concentrating, difficulty organizing information, difficulty sleeping, anxious/fearful thoughts, depressed mood, and, at times, suicidal ideation. (*Id.* (citing Tr. 419–23, 429, 433, 436, 440, 453, 490, 494)). But the ALJ noted that medication partially relieved these symptoms. (Tr. 22 (citing 405, 435, 524–72)). Ultimately, the ALJ concluded that "despite his mental impairments, the medical record showed mental status functioning that also does not establish functional limitations that would preclude the mental residual functional capacity. [Plaintiff] routinely presented as alert, oriented, and cooperative with neat appearance, normal memory, and no impairment in cognitive functioning." (Tr. 23 citing (Tr. 419–23, 424–44, 486–94, 514–73)). Furthermore, the ALJ noted Plaintiff's "conservative course of treatment for . . . mental health symptoms." (*Id.*). And, Plaintiff's "noted improvement in functioning, benefit from his medication regimen, and no

ongoing issues with side effects." (*Id.* (citing Tr. 424–44, 514–73)). Given this, the ALJ concluded that a "moderate limitation in interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself accounts for symptoms from the claimant's depressive and anxiety disorders and is consistent with limitations to perform simple, routine tasks, occasional interaction with supervisors, co-workers, and the public, and occasional and routine workplace changes." (*Id.*). Thus, it is clear—implicitly from the consideration of the record and explicitly from the moderate limitation—that the ALJ recognized Plaintiff's mental impairments and their impact on his ability to concentrate, persist, and pace, and tailored the RFC accordingly.

Second, the ALJ considered the opinions of the State agency psychological consultant and Marc E. Miller, Ph.D. (Tr. 24). Plaintiff alleges that the ALJ's explanation regarding his partial incorporation of these opinions is unclear and it "seem[s] that the ALJ passed the evidence, selecting the parts of the psychologist opinions that supported his findings, instead of relying upon the substantial evidence of the record . . . ." (Doc. 21 at 9). But the ALJ explained why he found the opinions only partially persuasive. Regarding the opinion of the State agency psychological consultant, the ALJ said:

> [T]he limitations regarding social interactions and a flexible break schedule are not persuasive because they are vague and not supported by the evidence that indicated improved and stable symptoms when following a medication regimen (Tr. 404–18, 424–44, 486–94, 514–73). In addition, I note the record indicated [Plaintiff] presented at times as guarded and withdrawn yet he remained cooperative with no impulsivity and explained he spent most of his time at home taking care of his minor daughter because his girlfriend was hardly at home to help (Tr. 419–23, 454).

(Tr. 24). Similarly, the ALJ explained how he considered Marc E. Miller's opinion:

> I find these opinions partially persuasive because they are generally consistent with the record as a whole that that support no moderate than moderate limitations and that the record that showed [Plaintiff] followed a conservative course of treatment that consisted of a medication regimen from which he experienced improvement and stability. I also find these opinions are consistent with intact cognitive functioning, estimated average intelligence, and no notable academic concerns (Tr.

10

> 419–23, 462–63). In addition, despite his depressed mood, flat affect, and withdrawn and guarded behavior, [Plaintiff] presented as well developed, oriented, and cooperative with average appearance and grooming, good hygiene, no memory impairment, no abnormal thought content, and adequate insight and judgment (Ex. 419–23, 428, 433, 457, 524–72, 586).

(Tr. 25). The ALJ explained why he found these opinions to be partially persuasive based on the record.

Further, an ALJ is "not required to incorporate the entirety of [an] opinion into an RFC," *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), because ultimately the ALJ, not a physician, determines the RFC. 42 U.S.C. § 423(d)(5)(B); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). Indeed, "[a]n RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of an ALJ." 20 C.F.R. §§ 404.1527(e), 405.1546. Therefore, the ALJ was not required to incorporate any portion of these opinion into his RFC.

      B.      **Bilateral Carpal Tunnel Syndrome**

Next, Plaintiff alleges that the ALJ's RFC analysis is not supported by substantial evidence because he failed to properly consider and include limitations for Plaintiff's bilateral carpal tunnel syndrome. (Doc. 21 at 10). While Plaintiff mentions that in his view the ALJ should have considered Plaintiff's bilateral carpal tunnel syndrome to be a severe impairment at Step 2, he ultimately argues that "regardless of the error to determine the proper severity of [Plaintiff's] bilateral carpal tunnel syndrome, the ALJ still has a duty to consider the limitations imposed by both severe and non-severe impairments." (*Id.* at 11). Plaintiff says that "the ALJ simply disregarded [Plaintiff's] symptoms of decreased grip strength, numbness in fingers, nocturnal paresthesia, pain in fingers and tingling sensation in fingers" in the ALJ's RFC determination. (*Id.* at 11 (citing Tr. 521, 527, 561)).

11

The ALJ considered Plaintiff's carpal tunnel syndrome in the RFC determination. Again, in an RFC determination, the ALJ's role is to reach a conclusion based on his evaluation of medical and non-medical evidence. Here, the ALJ considered Plaintiff's hearing testimony, the opinions of the State agency consultants, and the medical record. (Tr. 21–24).

Regarding Plaintiff's hearing testimony, the ALJ noted "[Plaintiff] reported problems with . . . carpal tunnel. . . . [And his testimony] . . . that it hurts to grip or hold things due to pain and numbness, it hurts to lift his daughter, and he has a hard time bending to wash dishes (Tr. 54)." (Tr. 21). The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms[,]" including bilateral carpal tunnel syndrome, "are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

The ALJ considered the State agency consultants' opinion that "the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Push and/or pull is unlimited other than shown for lift and/or carry. The claimant can never climb ladders, ropes, or scaffolds, and frequently stoop, kneel, crouch, and crawl." (Tr. 24). The ALJ found "these opinions persuasive because they are consistent with imaging that confirmed the claimant's conditions." (*Id.* (citing Tr. 256–399, 514–73)). The ALJ also found "these limitations are consistent with examinations that showed some associated tenderness and reduced range of motion but otherwise intact functioning with normal extremities and gait." (*Id.* (citing Tr. 420, 428, 433, 439, 493, 524–72)). In supporting his conclusion that the State agency consultants' opinion were persuasive, the ALJ cited to portions of the record which include Plaintiff's carpal tunnel symptoms: Tr. 524, which notes "Positive phalen's bilaterally," and Tr. 527, which notes bilateral carpal tunnel syndrome, a treatment plan, and a referral.

12

Finally, the ALJ also considered "other musculoskeletal conditions" and concluded that Plaintiff "continued to present as well developed with normal respiratory effort, regular heart rate and rhythm, and normal extremities." (Tr. 22 (citing Tr. 524–72)). Plaintiff argues that the "record consistently documents" carpal tunnel symptoms, but only cites to a record the ALJ considered, Tr. 527; a page that lists bilateral carpal tunnel syndrome and the symptoms listed in hearing testimony, Tr. 521; and a page that seems unrelated to Plaintiff's bilateral carpal tunnel syndrome, Tr. 561. Accordingly, the Undersigned disagrees with Plaintiff's assertion that the ALJ disregarded the evidence.

Further, the ALJ is "charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). Here, the ALJ did that by considering Plaintiff's hearing testimony regarding bilateral carpal tunnel syndrome, the State agency consultants' opinions regarding Plaintiff's physical capabilities, and the medical record.

### C. ALJ's RFC is Supported by Substantial Evidence

In sum, the ALJ considered and weighed the evidence before him, including limitations in concentration, persistence, and pace; and limitations related to bilateral carpal tunnel syndrome, and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 21). Because of this, the ALJ determined the Plaintiff's had the RFC to perform light work, "except he can never climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, and crawl. He is able to perform only simple, routine tasks with only occasional interactions with supervisors, co-workers, and the public, and can tolerate only occasional and routine workplace changes." (Tr. 20).

Fundamentally, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), *report and recommendation adopted*, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), *aff'd*, 690 F. App'x 385 (6th Cir. 2017). But the law prohibits the Court from re-weighing the evidence and substituting its judgment for the ALJ's. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.")). Because the ALJ considered Plaintiff's physical and mental impairments, and the impact of those impairments on his ability to work, substantial evidence supports the ALJ's RFC finding.

## IV.  CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that judgment be entered in favor of Defendant.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 12, 2022

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE